MARYLAND CASUALTY COMPANY, Plaintiff and Appellant, v. BUFFALO LIFE ASSOCIATION ET AL., Defendants and Appellees.

No. 7100. Argued November 24, 1936.—Decided February 16, 1937.

*Juan B. Soto, Juan F. Soto* and *Enrique Igaravídez* for appellant.
*Luis Mercader* for appellee Petra Guzmán.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The plaintiff, Maryland Casualty Company, appeals from a judgment for defendants in its action against the Buffalo Life Association and Petra Guzmán widow of Arroyo. The complaint alleges substantially:

That on April 1, 1931 the defendant Buffalo Life Association insured the life of Victorio Arroyo Laracuente for $5,000, which it agreed to pay at his death to Petra Guzmán de Arroyo, the other defendant.

That Victorio Arroyo Laracuente died in Arecibo on November 26, 1933, which fact the plaintiff communicated to the Buffalo Life Association by means of a certified copy of the death certificate.

That on November 18, 1933 the insured assigned to the plaintiff the said $5,000 policy no. H–8092, in payment of the sum of $4,466.23 which he owed to it, a fact of which the plaintiff also notified the Buffalo Life Association.

That the plaintiff as assignee, and, on information and belief, Victorio Arroyo Laracuente, always fulfilled all of the conditions of the policy, in spite of which, the Buffalo Life Association has not paid the plaintiff the $5,000 of the policy or any part thereof.

It requests that judgment be rendered providing that the $5,000, the amount of the policy, belongs to it and must be paid it with interest from the date of the complaint.

The defendant Petra Guzmán answered attacking the suficiency of the complaint, denying some facts and accepting others. As a special defense she alleged that the plaintiff and Victorio Arroyo Laracuente, a few days before his death "were discussing a transaction which they never executed, and as a result of this Arroyo sent the former two policies, one for $5,000 no. H–8092, of the Buffalo Life Association, and another for $2,000, no. D–4150, of the Occidental Life Insurance Co., both insuring Victorio Arroyo Laracuente with Petra Guzmán as beneficiary, which policies the plaintiff was to examine and return to Mr. Arroyo in due course"; that Arroyo died without completing the transaction, the plaintiff retaining the two policies until December 4, 1933, when it

returned no. D–4150 to the beneficiary and retained H–8092, which it has refused to return.

She also filed a cross-complaint in which she alleges two causes of action. By virtue of the first she requests that the court declare her the owner and sole beneficiary of policy no. H–8092; in the second she prays for damages which she alleges were caused her by the Maryland Casualty Company **in retaining possession of the said policy H–8092**, preventing her from collecting it and lending the amount at an annual interest of 8%.

The case was tried without an appearance by the Buffalo Life Association, whose default was entered, and the court rendered judgment with the following pronouncements:

1. Judgment for defendants on the complaint.

2. Judgment for cross-complainant on the first cause of action of the cross-complaint, and as a result the Maryland land Casualty Company was order to return and deliver to the cross-complaint Petra Guzmán widow of Arroyo, policy No. H–8092, *supra*.

3. No award of costs.

The grounds for the said judgment were that at the death of Arroyo no contract had been consummated between him and the Maryland Casualty Co. whereby the former assigned to the latter policy H–8092 in payment of the sum of $4,466.23. since the consent of Arroyo would have been necessary and he never gave it.

The plaintiff appealed, assigning the following errors which can be discussed jointly:

1. The District Court for the Judicial District of Arecibo committed manifest error in holding that the evidence shows that the consent necessary to effect the assignment by Victorio Arroyo Laracuente of policy no. H–8092, referred to in the complaint, did not exist.

2. The District Court for the Judicial District of Arecibo committed manifest error in not finding that consent was proved.

3. The District Court for the Judicial District of Arecibo committed manifest error in rendering judgment against the plaintiff.

The oral evidence of the plaintiff consisted of the testimony of Savino Valdés, claim manager of the Maryland Casualty Co., of Albert E. Copeland, manager of Armour & Co. in Puerto Rico, and of Sinforoso Rovira Carbo, also an employee of the firm Armour & Co. It also presented documentary evidence consisting of policy no. H–8092 and six letters to which we will refer in due course.

The testimony of Valdés reveals that the Maryland Casualty Co. had given a bond for the faithful discharge of Victorio Arroyo Laracuente's duties as salesman of the firm of Armour & Co. in the district of Arecibo; that in the exercise of his duties Arroyo could not render satisfactory accounts to the firm Armour & Co. of the sum of $4,466.23 which sum the latter claimed from the Maryland Casualty Co. and the claim was accepted; that Valdés then, as representative of the plaintiff, began to deal with Arroyo to recover the said $4,466.23 and for this purpose visited him in Arecibo on October 28, 1933, and Arroyo agreed to send him a policy which he was to receive from the United States, for examination. That on October 31, 1933, he wrote to Valdés in the following terms:

"October 31, 1933.

"Mr. Savino Valdés,
"San Juan, P. R.,

"Dear Sir:

The policy which I agreed to send you for *your examination for the purposes of carrying out the transaction of which we were speaking* did not arrive from California by yesterday's mail as I expected. I believe that it will arrive not later than the next mail as nearly a month has passed since it was sent.

At any rate, I am enclosing my policy no. H–8092 for $5,000 with the Buffalo Life Association for examination *and return with your suggestions, or better, when you come this way soon, we will get together. (Italics ours).*

"I am always at your service and remain,

"Yours truly,

"(Sgd.) Victorio Arroyo."

That Valdés answered him on November 7, 1933, as follows:

"November 7, 1933.

"4138–P. Rico

"Armour & Company,

"Victorio Arroyo.

"Mr. Victorio Arroyo,

"Arecibo, P. R.

"Dear Sir:

"Thank you for your letter of October 31 with which you sent us a policy of the Buffalo Life Association for the amount of $5,000.

"Please be so kind as to send us the policy for $2,000 which you offered to send us.

"Thanking you in advance, we remain.

"Yours truly,

"(Sgd.) S. Valdés,

"Mgr. P. Rico Claim Division."

That on November 18 of the same year, when Valdés was coming from Mayagüez he again visited Arroyo, the latter showing him a copy of the letter which he had written to him at San Juan on the day before and which Valdés had not had an opportunity to read. The said letter reads as follows:

"November 17, 1933.

"Mr. Savino Valdés

"c/o Maryland Casualty Co.,

"San Juan, Puerto Rico.

"Dear Sir:

"I received in due course your letter of the 7th of this month and in accordance with the same and with what we had discussed, having already received the policy from California, I have the pleasure of enclosing it *in order that you may examine it to see if it is feasible to carry out the transaction of which we spoke.*

"The policy which I previously remitted to you from the Buffalo Mutual Life Insurance Co. as well as the one I am now enclosing from the Occidental Life Insurance Co. have their premiums paid up to the middle of December next as you will see from the receipts

enclosed herein, *for which reason I should appreciate your making a prompt decision about the transaction soon* since these premiums must be attended to in order to avoid risking loss for not paying them on time. (*Italics ours*).

"Awaiting your reply, I remain as ever,

"Yours truly.

"(Sgd.) Victorio Arroyo.

"Enc. Policy No. D–4150 for $2,000 with the Occidental Life Insurance Co."

That at the said interview Arroyo agreed to transfer definitely the policy for $5,000; that he then explained to him the necessity of transferring the $2,000 policy also in order to pay the premiums, since it was impossible to foresee how much longer Arroyo would live. That on November 21, 1933, Valdés wrote to Arroyo in the following terms:

"November 21, 1933.

"4138—P. Rico,
"Armour & Company,
"Victorio Arroyo.
"Mr. Victorio Arroyo,
"Arecibo, P. R.

"Dear Sir:

"I acknowledge receipt of your letter of the 18th of the current month as well as the policy for $2,000 with the Western Mutual Life Association.

"In regard to the policy for $5,000 with the Buffalo Life Association I must inform you that the agent for the latter, Mr. W. R. Bennett, informs us that this policy pays $5,000 only plus a dividend which would not cover the amount of the premium for several years, *for which reason it is necessary that you transfer both policies to us.*

"I was expecting to receive today a copy of your letter requesting the assignment papers from the Buffalo Life, but I have not received it and I beg that upon receipt of this letter you request the said papers not only from the Buffalo but from the Western Mutual by airmail and do not fail to send me a copy of your letter. *I am anxious to finish this business and do not doubt that you are too,*

*in order to leave everything settled in the most satisfactory manner
possible.* (Italics ours.)
    "Awaiting your reply by return mail, I remain,
                "Yours truly,

            " (Sgd.)  S. Valdés,
                "Mgr. P. Rico Claim Division."

That as Arroyo did not answer, Valdés wrote to him again
on November 23:

"4138—P. Rico,
"Armour & Company,
"Victorio Arroyo.
"Mr. Victorio Arroyo,
"Arecibo, P. R.

"Dear Sir:
    "We earnestly beg your attention to our letter of November 21.
We trust that you will be kind enough to send as a copy of the
letter you write to the Buffalo Life and to the Western Mutual.
              "Yours truly,

            " (Sgd.)  S. Valdés,
                "Mgr. P. Rico Claim Division."

That on the 24th of the same month, Arroyo wrote the
following to Valdés:
                    "Nov. 24/33.
"Mr. Savino Valdés,
"c/o Maryland Casualty Co.,
"San Juan, P. R.

"Dear Sir:
    "I have before me your letters of the 21st and 23rd of the cur-
rent month and I have noted them well.
    "Upon receiving and reading your first letter (Nov. 21) I decided
not to answer it and to await your next visit, which I imagined
would be at the end of the week, since I wished to discuss with you
personally what you inform me about the value of my policy for
$5,000 with the Buffalo Life Insurance Co., now as well as some
years later, since I believe it to be an error.
    "Upon receiving your letter of yesterday in which you again ask
me to request the blanks for both policies, I beg to inform you that

*I have requested the blank corresponding to the policy for $5,000,* as you will see from the copy of the letter which I have written for that purpose on the 22nd of the current month, *but I did not request the other as I did not think it necessary* and for other reasons which are obvious now. I stand where I stood when we began to discuss this transaction at my instance. *Therefore, I wish to reach a definite agreement with you as soon as possible so that everything will be arranged when the blank arrives and there will be nothing to do but make the transfer.* (Italics ours.)

"I enclose the last receipt of the policy mentioned above, which includes the months of Oct., Nov. and Dec. 1933. Please attach it to the policy and note it.

"Please return to me the policy for $2,000 with the Occidental and when you come this way bring the other one if you wish to discuss the same.

"Awaiting your reply I am

"Yours truly,

"(Sgd.) Victorio Arroyo."

He also testified on cross-examination that after the death of Arroyo he sent a man named Arias, employee of the Maryland Casualty Co., to Arecibo to obtain from the widow as beneficiary the written assignment of policy H–8092.

The decision of this case depends upon the interpretation which we may give to the correspondence between the insured Arroyo and the alleged assignee with reference to the transfer or assignment of the policies to satisfy the debt of Arroyo to the firm of Armour & Co.

We have carefully read all of the correspondence and we believe ourselves justified in holding that the interpretation given to it by the lower court is correct. Let us examine it in detail.

In his letter of October 31, 1933, that is, three days after his first interview with Valdés, the insured Arroyo tells Valdés that he is sending policy no. H–8092 *for your examination for the purposes of carrying out the transaction of which we were speaking,* and that he makes the delivery *for examination and return with your suggestions,* and adds, *or better,*

*when you come this way soon we will get together.* Valdés answered this letter acknowledging receipt of the policy and requesting that the other policy for $2,000 be sent.

It is evident that those two letters do not constitute an agreement between the parties. They are mere evidence of negotiations tending toward an agreement.

With his letter of November 17, 1933, Arroyo sent the California policy for $2,000 to Valdés *"in order that you may examine it to see if it is feasible to carry out the transaction of which we spoke";* and after informing him that the premiums of both policies were paid to December, he added: *"for which reason I should appreciate your making a prompt decision about the transaction."* These last words are clear proof that up to November 17, the transaction which Valdés and Arroyo were discussing was still pending decision.

Valdés alleges in his testimony that he had an interview with Arroyo on November 18 and that the latter agreed to transfer the $5,000 policy to the plaintiff company definitely. Let us see if the interpretation given by Valdés to his interview with Arroyo, to the effect that an agreement for the definite transfer of the policy for $5,000 was then reached, is corroborated by the correspondence between the parties subsequent to the date of the interview.

On November 21, 1933, Valdés writes to Arroyo informing him that the agent of the Buffalo Life Association has informed him that the dividend of the policy with the said association would not cover the premium for several years, and tells him: "for which reason it is necessary that you transfer both policies to us." And further on, in the same letter, after begging him to request from the two insurance companies the papers necessary to assign the two policies Valdés says: "I am anxious to finish this business and do not doubt that you are too, in order to leave everything settled in the most satisfactory manner possible."

Arroyo answered this letter on the 24th of the same month informing Valdés that he had requested the blanks for the

transfer of the policy of the Buffalo Life Association and added "but I did not request the other as I did not think it necessary". And immediately he said: ". . . I stand where I stood when we began to discuss this transaction at my instance. Therefore I wish to reach a definite agreement with you as soon as possible so that everything will be arranged when the blank arrives there will be nothing to so but make the transfer."

The two letters which we have just commented upon clearly refer to an agreement which is not yet in being, and the terms and conditions of which have not been definitely agreed upon by the parties. While Valdés insists that in order to definitely close the transaction it is necessary for Arroyo to assign to the plaintiff his two policies, one for $5,000 and the other for $2,000, Arroyo reiterates his original offer of assigning only the $5,000 policy, stating that he is willing to do it when they reach a definite agreement and as soon as the blank of the company arrives.

The essential facts established by the evidence may be condensed as follows: Arroyo, owner of two insurance policies, owed a sum of money to the plaintiff, and in order to pay that debt he offered to assign to his creditor the $5,000 policy. The creditor insisted that both policies should be assigned because it considered that the one for $5,000 was not sufficient for its protection, inasmuch as the creditor would have to pay the premiums during the lifetime of the debtor. The debtor replied stating that he was willing to assign the policy for $5,000 for which he had already requested the necessary blanks, but not the other policy because he thought it unnecessary. The creditor again insisted that both policies be assigned, in order to have everything settled satisfactorily. Two days after having written his last letter to Valdés on November 24, 1933, Victorio Arroyo died, leaving the two insurance policies in the possession of the plainitff and without having finished the discussion of the business to which the correspondence presented referred.

The examination which we have made of all the evidence leads us to the conclusion that in this case the consent of the contracting parties, without which there can be no contract, according to the provisions of Sections 1213 and 1214 of the Civil Code (1930 ed.) never existed. While the plaintiff demanded the assignment of two policies which totaled $7,000, as a cause or consideration for satisfaction of Arroyo's debt, the latter insisted that his obligation be extinguished by the assignment of the policy for $5,000, involved in this suit. There was not, therefore, any contract between Arroyo and the Maryland Casualty Company by virtue of which the said company became the owner and beneficiary of the Buffalo Life Association policy. Arroyo died while still the debtor of the Maryland Casualty Company, but while still the owner of his two policies, which must be paid to the beneficiaries designated in them.

For the reasons stated the judgment appealed from is modified in the sense of adding that the amount deposited as the proceeds of policy H–8092 of the Buffalo Life Association must be paid to the beneficiary against delivery of the policy and such documents as may be necessary for the protection of the insurer, and thus modified, affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.